No. 25-13005

# In The United States Court of Appeals
## for the Eleventh Circuit

CASSANDRA SIMON, ET AL.,

*Plaintiffs-Appellants,*

v.

GOVERNOR OF THE STATE OF ALABAMA, ET AL.

*Defendants-Appellees.*

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NO. 2:25-CV-00067-RDP

Jin Hee Lee
Antonio L. Ingram II
Emahunn Campbell
Mide Odunsi
NAACP Legal Defense &
Educational Fund, Inc.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300

Daniel A. Cantor*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
(202) 942-5000

Alison Mollman
ACLU of Alabama
PO Box 6179,
Montgomery, AL 36106
(510) 909-8908

Carmen Lo
Arnold & Porter Kaye Scholer LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
(650) 319-4500

*Admitted pro hac vice
(Caption continues on next page)

*(Caption continued from front page)*

Michael Rogoff
Purti Pareek
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7684

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................i

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ......................................................................................1

I.    The District Court Properly Found that Plaintiff Professors Had Standing to Bring a First Amendment Claim Based on Viewpoint Discrimination. ................................................................................3

    A.    The District Court Correctly Found that Professor Plaintiffs Made "Clear Showing" of "Likely" Standing. ..........................3

    B.    The District Court Properly Found SB129 Caused Professor Plaintiffs to Self-Censor and Suffer an Injury-in-Fact. .............4

II.    The District Court Abused Its Discretion in Finding Student Plaintiffs Lacked Standing to Assert Viewpoint Discrimination Claims in Student Funding and Student Space Allocation..................................6

    A.    Student Plaintiffs Properly Asserted Sufficient Evidence at Their Motion for Preliminary Injunction to Establish Standing.6

    B.    Plaintiff Testman Has Standing to Bring a First Amendment Claim based on the Loss of Student Funding. ..........................7

    C.    Plaintiff Luna Has Standing to Bring a First Amendment Claim Based on the Loss of Student Funding. ...................................10

    D.    Plaintiff Alabama NAACP Has Standing to Bring a First Amendment Claim Based on the Freedom of Association.......12

III.    The District Court Committed an Abuse of Discretion in Finding that Professor Plaintiffs Do Not Have a Substantial Likelihood of Succeeding on the Merits of Their First Amendment Claim..............14

    A.    Professor Plaintiffs' Speech Is Not Government Speech Under *Garcetti*. ................................................................................15

    B.    Professor Plaintiffs Prevail Under *Bishop*'s Balancing Test....16

C.      The *Pickering* Balancing Test Weighs in Professor Plaintiffs' Favor. ..................................................................24

IV.    Student Plaintiffs Testman and Luna Have a Substantial Likelihood of Succeeding on the Merits of Their Claim Regarding the University's Denial of Student Funding. ....................................................28

V.     The District Court Abused its Discretion in Failing to Find a Substantial Likelihood of Success on the Merits for the Void for Vagueness Claims. ..................................................................29

A.      SB129 is Vague in Any Application in Violation of Due Process and, in the Alternative, in the Vast Majority of Its Intended Applications. ............................................................29

B.      The Terms "Objective Manner," "Without Consent," and "Historically Accurate" Are Unconstitutionally Vague. ..........31

C.      SB129's Scienter Requirement Does Not Alleviate the Law's Vagueness. ..................................................................32

D.      The Terms "Compel Assent" and "Advocate For" Are Unconstitutionally Vague. .....................................................32

E.      SB129's Eight Enumerated Divisive Concepts Are Unconstitutionally Vague. .....................................................33

F.      SB129 Authorizes or Encourages Arbitrary and Discriminatory Enforcement. ..........................................................34

VI.    The Remaining Preliminary Injunction Factors Favor Plaintiffs........35

## TABLE OF AUTHORITIES

*Abbott v. Pastides*,
    900 F.3d 160 (4th Cir. 2018) .......................................................5, 6

*Adams v. Trs. of the Univ. of N.C.-Wilmington*,
    640 F.3d 550 (4th Cir. 2011) ..........................................................23

*Baker v. City of Atlanta*,
    164 F.4th 850 (11th Cir. 2026) .........................................................6

*Belyeu v. Coosa Cnty. Bd. of Educ.*,
    998 F.2d 925 (11th Cir. 1993) .........................................................27

*Bethel Sch. Dist. No. 403 v. Fraser*,
    478 U.S. 675 (1986)........................................................................16

*Bishop v. Aronov*,
    926 F.2d 1066 (11th Cir. 1991) ................................16–19, 21–24

*Brown v. Chi. Bd. of Educ.*,
    824 F.3d 713 (7th Cir. 2016) ..........................................................16

*Cable Ala. Corp. v. City of Huntsville, Ala.*,
    768 F. Supp. 1484 (N.D. Ala. 1991) .............................................29

*CAMP Legal Def. Fund, Inc. v. City of Atlanta*,
    451 F.3d 1257 (11th Cir. 2006) ........................................................4

*Cate v. Oldham*,
    707 F.2d 1176 (11th Cir. 1983) ......................................................10

*Catron v. City of St. Petersburg*,
    658 F.3d 1260 (11th Cir. 2011) ......................................................30

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990)........................................................................24

*Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of L. v. Martinez*,
    561 U.S. 661 (2010)........................................................................22

*Church v. City of Huntsville*,
    30 F.3d 1332 (11th Cir. 1994) ..........................................................6

*Doe v. Duncanville Indep. Sch. Dist.*,
    70 F.3d 402 (5th Cir. 1995) ............................................................19

*E.K. ex rel. Keeley v. Dep't of Def. Educ. Activity*,
    807 F. Supp. 3d 517 (E.D. Va. 2025) ......................................................20

*Fellowship of Christian Univ. Students at Univ. of Tex. at Dallas v. Eltife*,
    806 F. Supp. 3d 662 (W.D. Tex. 2025) ....................................................27

*Galda v. Rutgers*,
    589 F. Supp. 479 (D.N.J. 1984) ...............................................................35

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ............................................................................15, 24

*Gay Lesbian Bisexual All. v. Pryor*,
    110 F.3d 1543 (11th Cir. 1997) ...............................................................28

*Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*,
    36 F.4th 1100 (11th Cir. 2022) ..................................................................5

*Gibson v. Firestone*,
    741 F.2d 1268 (11th Cir. 1984) .................................................................9

*Gutierrez v. Saenz*,
    606 U.S. 305 (2025) .................................................................................14

*Hall v. Sec'y, Alabama*,
    902 F.3d 1294 (11th Cir. 2018) ...............................................................11

*Hallandale Pro. Fire Fighters Loc. 2238 v. City of Hallandale*,
    922 F.2d 756 (11th Cir. 1991) ...................................................................5

*Harrell v. Fla. Bar*,
    608 F.3d 1241 (11th Cir. 2010) .................................................................7

*Healy v. James*,
    408 U.S. 169 (1972) .................................................................................16

*Heim v. Daniel*,
    81 F.4th 212 (2nd Cir. 2023) ...................................................................22

*Henry v. Att'y Gen.*,
    45 F.4th 1272 (11th Cir. 2022) ..................................................................4

*Hill v. Colorado*,
    530 U.S. 703 (2000) ............................................................................30, 34

iv

*Honeyfund.com, Inc. v. DeSantis*,
    622 F. Supp. 3d 1159 (N.D. Fla. 2022) .......................................................31

*Honeyfund.com, Inc. v. Governor, Fla.*,
    94 F.4th 1272 (11th Cir. 2024) .................................................7, 20, 26, 31

*Horton v. City of St. Augustine, Fla.*,
    272 F.3d 1318 (11th Cir. 2001) ................................................................29

*Intervarsity Christian Fellowship/USA v. Univ. of Iowa*,
    5 F.4th 855 (8th Cir. 2021) ......................................................................26

*Keyishian v. Bd. of Regents of Univ. of State of N.Y.*,
    385 U.S. 589 (1967)................................................................15, 21, 27, 29

*Kilborn v. Amiridis*,
    131 F.4th 550 (7th Cir. 2025) .............................................................16, 22

*Knight v. State of Alabama*,
    14 F.3d 1534 (11th Cir. 1994) ..................................................................24

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................14

*Melendez v. Sec'y, Fla. Dep't of Corr.*,
    No. 21-13455, 2022 WL 1124753 (11th Cir. 2022)...................................36

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ...........................................................15, 21, 25

*Murthy v. Missouri*,
    603 U.S. 43 (2024).................................................................................3, 6

*Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*,
    779 F. Supp. 3d 149 (D.N.H. 2025) ..........................................................35

*New Jersey v. T.L.O.*,
    469 U.S. 325 (1985)..................................................................................16

*O'Laughlin v. Palm Beach Cnty.*,
    30 F.4th 1045 (11th Cir. 2022) .................................................................17

*Papish v. Bd. of Curators of Univ. of Mo.*,
    410 U.S. 667 (1973)..................................................................................22

*Pernell v. Fla. Bd. of Governors of State Univ. Sys.*,
    641 F. Supp. 3d 1218 (N.D. Fla. 2022) ...........................................19, 20, 31

v

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968)..................................................................24, 25

*Pittman v. Cole*,
    267 F.3d 1269 (11th Cir. 2001) ...................................................7

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
    490 U.S. 477 (1989)....................................................................16

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
    515 U.S. 819 (1995)............................................................9, 11, 19

*Rumsfeld v. FAIR*,
    547 U.S. 47 (2006)........................................................................5

*S. River Watershed All., Inc. v. Dekalb Cnty., Ga.*,
    69 F.4th 809 (11th Cir. 2023) ......................................................8

*Scallet v. Rosenblum*,
    911 F. Supp. 999 (W.D. Va. 1996), *aff'd*, 106 F.3d 391 (4th Cir. 1997)......24

*Schoenthal v. Raoul*,
    150 F.4th 889 (7th Cir. 2025) ......................................................8

*Speech First, Inc. v. Cartwright*,
    32 F.4th 1110 (11th Cir. 2022)..............................................21, 23

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)......................................................................4

*Sweezy v. New Hampshire*,
    354 U.S. 234 (1957)..........................................................20, 23, 27

*Taylor v. Polhill*,
    964 F.3d 975 (11th Cir. 2020) ..................................................4, 5

*Tenn. Educ. Ass'n v. Reynolds*,
    732 F. Supp. 3d 783 (M.D. Tenn. 2024) .....................................30

*United States v. Alabama*,
    691 F.3d 1269 (11th Cir. 2012) ..................................................35

*United States v. Stevens*,
    559 U.S. 460 (2010)....................................................................26

*Urofsky v. Gilmore*,
    216 F.3d 401 (4th Cir. 2000) ......................................................23

vi

*Wollschlaeger v. Governor, State of Fla.*,
    848 F.3d 1239 (11th Cir. 2017) ........................................................30

*Wood v. Fla. Dep't of Educ.*,
    142 F.4th 1286 (11th Cir. 2025) .......................................................15

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
    247 F.3d 1262 (11th Cir. 2001) ..........................................................3

*Yates v. United States*,
    574 U.S. 528 (2015) ..........................................................................31

*Yin v. Diaz*,
    773 F. Supp. 3d 1344 (S.D. Fla. 2025) ............................................29

**INTRODUCTION**

This appeal turns on (1) Whether Alabama lawmakers may prohibit professors from expressing academic viewpoints regarding certain topics and coursework related to race and sex merely because lawmakers disfavor them; (2) How much evidence is required to establish standing for a preliminary injunction on First Amendment claims; and (3) Whether the language of SB129 itself is unconstitutionally vague. The answers are quite simple. First, Alabama lawmakers cannot prohibit particular viewpoints, and the district court abused its discretion in becoming the sole federal court to answer yes. Second, the district court had more than sufficient evidence of standing, especially in the First Amendment context. Finally, the district erroneously found SB129 not to be unconstitutionally vague even while expressing confusion over the text of SB129. Doc.73 at 336–37 (district court judge commenting that he was "confused" when reading SB129 and "wish[ing that his] clerks had drafted this").[1]

SB129 censors viewpoints disfavored by Alabama lawmakers. Contrary to Appellee Governor's contention, Gov. Br. 1, SB129 was not designed—nor does it operate—to bar professors from compelling assent to discriminatory viewpoints. Indeed, Provost Dalton, the Chief Academic Officer at the University of Alabama ("UA"), testified that he had no evidence of UA professors compelling students to

---

[1] References to district court filings are cited as "Doc.___".

1

believe in any of SB129's divisive concepts. Doc.69-7 at 13. Instead, SB129 has caused Professor Patton to omit documentaries about the history of Black Alabamians. Doc.72 at 67:17–69:9, 70:12–71:4. Instead of protecting students, SB129 has forced Professor Simon to cancel assignments designed to train the next generation of social workers in Alabama. *Id*. at 147:2–5, 136:19–137:1, 152:22–153:2. Moreover, SB129's viewpoint discrimination caused Professor Fording to excise historically-accurate content about both the Black Power Movement and white nationalist movements. Doc.73 at 239:17–24.

SB129's viewpoint discrimination encroaches far beyond the threshold of the classroom door. At the University of Alabama at Birmingham ("UAB"), SB 129 stripped funding for student groups led by Plaintiffs Testman and Luna. *Id.* at 319:12–321:11, 356:9–357:3. UA shut down spaces used by Alabama NAACP's members, the Black Student Union ("BSU") and Safe Zone, pursuant to SB129 enforcement. Doc.55-36. The ambiguity and vagueness of SB129, implicated in these enforcement actions, further injures all Plaintiffs. These injuries warranted, and still warrant, a preliminary injunction.

I.   **The District Court Properly Found that Plaintiff Professors Had Standing to Bring a First Amendment Claim Based on Viewpoint Discrimination.**

### A. The District Court Correctly Found that Professor Plaintiffs Made "Clear Showing" of "Likely" Standing.

The district court, relying on *Murthy v. Missouri*, correctly found that Professor Plaintiffs made a clear showing of likely standing, even under that decision's heightened post-discovery standard despite the pre-discovery posture of this case. 603 U.S. 43, 58 (2024); Doc.79 at 61. The strength of the record, even without discovery, caused the district court to find that Professors Plaintiffs all established standing to challenge SB129 under even this heightened standard. Doc.79 at 67–74.

Nonetheless, Appellee Governor argues that Plaintiffs lack standing because there is no threat of future injury. The evidentiary record belies this contention. Based on credible fears of Appellees' enforcement of SB129, Professor Fording stopped teaching his entire *Politics of Poverty* course because of fears that the course content would violate SB129. Doc.73 at 236:13–18. This self-censorship constitutes "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury" sufficient to confer Article III standing for injunctive relief. *Wooden v. Bd. of Regents of Univ. Sys. of Ga*, 247 F.3d 1262, 1284 (11th Cir. 2001) (emphasis in original).

3

### B. The District Court Properly Found SB129 Caused Professor Plaintiffs to Self-Censor and Suffer an Injury-in-Fact.[2]

The extensive record in this case, as well as established Eleventh Circuit precedent, refutes Appellee Governor's contentions that the district court erred in finding Professor Plaintiffs' self-censorship as cognizable injuries-in-fact. First, Professor Plaintiffs' alleged injuries-in-fact even if UA did not discipline them. In the First Amendment context, when "a plaintiff has stated that he intends to engage in a specific course of conduct arguably affected with a constitutional interest, . . . he does not have to expose himself to enforcement to be able to challenge the law." *Taylor v. Polhill*, 964 F.3d 975, 980 (11th Cir. 2020) (citation modified). Appellee Governor does not fare any better in arguing that Professor Plaintiffs failed to allege an injury-in-fact because they expressed no intent to violate SB129. Gov. Br. 25. Plaintiffs are not required to "confess that [they] will in fact violate that law" because the law itself provides no clear definition of what would constitute a violation. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014); *cf. CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269–70 (11th Cir. 2006). The district court properly found that a First Amendment harm occurs when a speaker, based on a credible fear of enforcement, is reasonably motivated to self-censor to avoid the risk of possible discipline or termination. *See, e.g., Henry v. Att'y Gen.*, 45 F.4th 1272,

---

[2] Appellants do not challenge the district court 's standing decision regarding suing Governor Kay Ivey in her official capacity as Governor of Alabama.

4

1288 (11th Cir. 2022); *Taylor*, 964 F.3d at 980; *Hallandale Pro. Fire Fighters Loc. 2238 v. City of Hallandal*e, 922 F.2d 756, 760 (11th Cir. 1991).

Appellee Governor attempts to minimize the threat of enforcement by describing the facts as mere "student complaints" and "non-adversarial" investigations, Gov. Br. 25–28. The undisputed facts in the record paint a different picture. For example, Professor Patton and Simon were both threatened with termination if they did not cooperate fully with the UA's enforcement of SB 129. Doc.72 at 42:2–43:1, 45:6–12, 147:2–5, 151:7–152:2. The requirement for standing in this matter is satisfied as long as a single Plaintiff has standing. *See Rumsfeld v. FAIR*, 547 U.S. 47, 52 n.2 (2006); *Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1113–14 (11th Cir. 2022). Here, the district court properly found Professor Plaintiffs had standing.

Appellee Governor argues that the district court 's injury-in-fact analysis was inappropriate based on the Fourth Circuit's decision in *Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018). However, the facts of *Abbott* are factually distinguishable in significant ways. First, in *Abbott*, the administrative inquiry that could have resulted in disciplinary sanctions was never initiated. *Id*. at 166. In stark contrast, Professor Patton experienced a full and onerous investigation with the threat of termination, corroborated during a confrontation with an Alabama lawmaker. Second, in *Abbott*, no action was taken, and there was no ongoing threat to plaintiffs' speech. *Id*. Here,

UA demanded that Professor Simon cancel an assignment and threatened possible termination despite the absence of a complaint or investigation. Thus, unlike in *Abbott*, the record reflects that Professor Patton and Professor Simon personally experienced coercive enforcement of SB129, with threats to their employment and positions, running far afield from the speculative and non-adversarial investigations in *Abbott*.

## II.   The District Court Abused Its Discretion in Finding Student Plaintiffs Lacked Standing to Assert Viewpoint Discrimination Claims in Student Funding and Student Space Allocation.

### A. Student Plaintiffs Properly Asserted Sufficient Evidence at Their Motion for Preliminary Injunction to Establish Standing.

Appellee Governor contends that Plaintiffs impermissibly rely on *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994), to establish redressability for Plaintiffs Testman, Luna, and Alabama NAACP's First Amendment claims. Gov. Br. 21. Appellee Governor argues that the *Murthy* standard should instead apply. *Id*.; *see Murthy*, 603 U.S. at 58.

However, the Eleventh Circuit has not determined what evidentiary standard governs preliminary injunctions. *Baker v. City of Atlanta*, 164 F.4th 850, 861 n.7 (11th Cir. 2026). While Plaintiffs would prevail under either standard, given that discovery has not commenced, and this is a Preliminary Injunction to prevent First Amendment injuries, the evidentiary standard in *Church* should govern, even though Appellees challenged standing. Importantly, courts apply standing factors, such as

6

the injury-in-fact requirement, loosely where First Amendment rights are implicated. *Harrell v. Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010); *see also Pittman v. Cole*, 267 F.3d 1269, 1283 (11th Cir. 2001).

### B. Plaintiff Testman Has Standing to Bring a First Amendment Claim based on the Loss of Student Funding.

#### 1. Plaintiff Testman Has Successfully Shown an Imminent Injury-in-Fact.

Appellee Board makes a meritless argument that Testman has not established that she has a future injury and therefore cannot establish an injury-in-fact warranting an injunction. However, the record shows that Testman has established an injury-in-fact. Opening Br. 15–17. As a current student, Plaintiff Testman would continue her participation in SJAC if UAB discontinued its viewpoint discrimination. Doc.31-1. The Eleventh Circuit has made clear that "an 'ongoing violation of the First Amendment," like the denial of state funding based on viewpoints, not only is an injury-in-fact but "constitutes an irreparable injury." *Honeyfund.com, Inc. v. Governor*, *Fla.*, 94 F.4th 1272, 1299 (11th Cir. 2024).

#### 2. Plaintiff Testman's Injuries Under SB129 are Redressable.

Appellee Governor argues that the district court correctly determined that Plaintiff Testman's First Amendment student funding claim lacked redressability, based on self-serving representations from UAB administrators of a planned change in SJAC's funding that would have occurred independently of SB129. Appellee Board also argue that Plaintiff Testman lacks redressability due to a lack of evidence

7

about how enjoining SB129 would restore funding back to SJAC or restore Testman's role as finance coordinator with the associated stipend. The record evidence and Eleventh Circuit precedent demonstrate otherwise. First, despite the representations from a UAB administrator, it is undisputed that UAB terminated SJAC's funding because of SB129. Doc.69-8 at 58:7–59:20; Doc.73 at 316:22, 320:3–4. Despite potential uncertainty about how SJAC would have been funded, the decision to terminate SJAC's funding, the dismantling of the affiliate's board, and the loss of Testman's stipend were all directly caused by SB129. Doc.69-8 at 58:14–59:11, 62:3–23.

Appellee Board asks this Court to apply a heighted standard for redressability and request Plaintiffs to proffer evidence of how enjoining SB129 would reverse all of the harms Plaintiff Testman experienced. These requests, however, fail to appreciate that a claim is redressable if "a favorable decision would amount to a significant increase in the *likelihood* that the plaintiff would obtain relief that directly redresses the injury suffered." *S. River Watershed All., Inc. v. Dekalb Cnty., Ga.*, 69 F.4th 809, 820 (11th Cir. 2023) (citation modified). Removing the cause of Testman's injuries, SB129, increases the *likelihood* of obtaining relief. That is enough. Redressability requires a likelihood, not a guarantee. *See Schoenthal v. Raoul*, 150 F.4th 889, 903 (7th Cir. 2025).

Appellee Board contend that the district court does not have the authority to reopen the SMDP office or make disbursements to student groups because such actions would impermissibly encroach on the UAB's government speech, Board Br. 11. Conversely, Appellee Board argues that if SJAC is not government speech, then it is not a part of the UAB, thus rendering any injunction in violation of Rule 64(d)(2) of the Federal Rules of Civil Procedure. These arguments proffer a false dichotomy that contradicts U.S. Supreme Court precedent regarding student funding. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Though student groups like SJAC received State funding, the allocation of that funding must still comply with the First Amendment because UAB created a limited public forum and, therefore, is barred from engaging in viewpoint discrimination in the allocation of funding in that limited public forum. *Id.* As in *Rosenberger*, an injunction would not impermissibly infringe on UAB's government speech nor violate Rule 65(d)(2) because UAB created a limited public forum. Finally, courts have wide discretion to remedy constitutional violations, and the district court easily could have fashioned a preliminary injunction that restored the student funding denied to SJAC because of SB129's unconstitutional viewpoint discrimination. *Gibson v. Firestone*, 741 F.2d 1268, 1273 (11th Cir. 1984).

9

### C. Plaintiff Luna Has Standing to Bring a First Amendment Claim Based on the Loss of Student Funding.

#### 1. Plaintiff Luna Has Successfully Shown an Injury-in-Fact and Irreparable Harm.[3]

Appellees argue that Luna failed to demonstrate an injury-in-fact because he never applied for UA funding, only suspected that his student group, *Esperanza*, might be denied funding, and had access to private funding for which he did not apply. Gov. Br. 29. Appellee Board further argues that Luna did not suffer irreparable harm[4] because he could be made whole through monetary remedies. Board Br. 35.

The record and case law belie these contentions. Opening Br. 18–20. Moreover, the Supreme Court does not require a victim of discrimination to engage in futile acts, such as applying for ineligible funding, to establish standing. *Id.* at 19–20. Accordingly, precedent does not require Plaintiff Luna to engage in a futile application for RSO funding to establish an injury-in-fact. Doc.73 at 321:9–11.

Second, the availability of any private funding does not cure SB129's viewpoint discrimination stemming from the denial of State funding. *See*

---

[3] Plaintiff Luna's irreparable harm arguments also apply to Plaintiff Testman.

[4] Plaintiff timely filed their motion for a preliminary injunction (a few months after the law went into effect) and it "is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983).

*Rosenberger*, 515 U.S. at 819. Third, Plaintiff Luna's harms are irreparable because of the denial of student funding based on viewpoint, not because of the financial impact. Opening Br. 20–21. Finally, Plaintiff Luna is a current student, and the denial of funding to *Esperanza* as an RSO is ongoing, constituting a current and future injury-in-fact and irreparable harm. But for SB129, he would be eligible to apply for State funding for *Esperanza*.

### 2. Plaintiff Luna Has Successfully Established Redressability.[5]

Appellee Board argues that Luna cannot establish redressability because UAB revised its public guidance in June 2025, purporting to return State funding eligibility to all registered student groups. Doc.71 at 94–95. However, whether Appellees are complying with this policy remains a contested factual issue in this case. In addition, even if the policy has successfully changed, Plaintiff Luna still has standing because his harms are "capable of repetition, yet evading review." *Hall v. Sec'y, Alabama*, 902 F.3d 1294, 1297 (11th Cir. 2018). In other words, if SB129 is not enjoined, UAB has full discretion to return to the viewpoint-based discrimination that caused Plaintiff Luna's harm.

---

[5] The arguments for Plaintiff Testman's redressability also apply to Plaintiff Luna. *See supra* Section II(B)(2).

11

### D. Plaintiff Alabama NAACP Has Standing to Bring a First Amendment Claim Based on the Freedom of Association.

#### 1. The District Court Properly Found that Plaintiff Alabama NAACP Had Organizational Standing but Erred in Finding It Lacked Associational Standing.

Appellee Governor argues that the district court erred in finding that Alabama NAACP had organizational standing on the basis of self-censorship. However, as with Professor Plaintiffs, self-censorship provides a proper injury-in-fact in the First Amendment context. *Supra* Section I(B). Moreover, given the closure of the BSU and the denial of funding to other student groups, Doc.55-36 at 1, the Alabama NAACP's fears were objectively reasonable, and the district court properly found standing.

Appellee Governor argues that the district court properly found that Plaintiff Alabama NAACP lacked associational standing because the Alabama NAACP cannot possess standing to defend the rights of other organizations. In addition, Appellee Board argues that the district court properly found that the Alabama NAACP's freedom of association claim is not redressable. Doc.77-1; Doc.74-1 at 4. Both Appellees' arguments are unavailing.

First, the Alabama NAACP did not assert associational standing on behalf of other student groups. It is undisputed that members of the Alabama NAACP have been deprived of future access to the BSU and Safe Zone, spaces that many members used multiple times a week during the academic school year. Doc.73 at 397:1–7,

397:11–399:6, 410:5–14. These were spaces used by students, not organizations, and were open to all UA students. *Id.* at 314:18–21, 396:23–25, 410:2–4. The Alabama NAACP asserted associational standing on behalf of its student members, who are deprived of the opportunity to use those spaces due to SB129. The district court should have found associational standing for Alabama NAACP.

Second, the district court improperly concluded that Plaintiff Alabama NAACP did not provide enough evidence of why the BSU space was closed to establish redressability. To the contrary, under the governing standard for redressability, *supra* Section II(B)(1), Plaintiffs proffered more than enough information to establish standing at the Preliminary Injunction stage. For example, during his deposition, UA Provost Dalton stated:

> "From my understanding, I think we discussed the Black Student Union as well as the other programs that I have mentioned across campus, whether it be academic or curricular programs, cocurricular programs, as things that perhaps were related to one specific group that were not provided to others was something that we had to be aware of and take action, if necessary."

Doc.69-7 at 14. This is more than enough evidence to establish redressability.

Finally, Appellee Board's contentions of alternative rationales for the closures are not reasonable as a matter of legal interpretation, nor are they reasonable temporally given the timeline of when UA decided to close the BSU and Safe Zone. Opening Br. 22–23. Accordingly, any reliability on this guidance lacked credibility.

13

Finally, the Appellee Board misconstrues *Gutierrez* in contending that it was a narrow holding about removing a procedural barrier, as opposed to an unconstitutional barrier. Appellee's arguments are inconsistent with the fact that the Supreme Court in *Gutierrez* did not announce a new watershed rule but instead merely articulated longstanding principles of redressability. *Gutierrez v. Saenz*, 606 U.S. 305, 320 (2025) (quoting *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998)); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 & n. 7 (1992). *Gutierrez* demonstrates the longstanding principle that standing is not defeated simply because a state actor claims it would "find another reason" to reach the same result. *See Gutierrez*, 606 U.S. at 320.

### III. The District Court Committed an Abuse of Discretion in Finding that Professor Plaintiffs Do Not Have a Substantial Likelihood of Succeeding on the Merits of Their First Amendment Claim.

Appellees repeatedly concede that SB129 constitutes viewpoint discrimination. Doc.71 at 123–24. In resolving Professor Plaintiffs' First Amendment claims, therefore, the sole question for this Court is whether the government can ban professors from espousing certain viewpoints that the state legislature considers "divisive," while allowing professors to espouse the legislature's favored viewpoints on the same topics. Controlling precedent answers no.

### A. Professor Plaintiffs' Speech Is Not Government Speech Under *Garcetti.*

Plaintiffs acknowledge that the government, as a public employer, may impose some regulations on employee speech. However, it is well-established precedent that universities occupy a unique position within First Amendment jurisprudence, and the Supreme Court declined to explicitly extend the government speech framework developed in *Garcetti* to assessments of the constitutionality of speech restrictions on university faculty when it had the opportunity. *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006). Unsurprisingly, every single federal appellate court has rejected the argument that public university professors' speech constitutes government speech without any First Amendment protections when confronted with this issue. Opening Br. 25.

Excluding university teaching and scholarship from *Garcetti*'s government speech analysis is–not a grant of special treatment to university professors, but instead an affirmation of the Supreme Court's command to protect the free exchange of ideas at American public universities. *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967); *Meriwether v. Hartop*, 992 F.3d 492, 507 (6th Cir. 2021). Appellees' citation to *Wood v. Fla. Dep't of Educ.*, 142 F.4th 1286 (11th Cir. 2025), a case involving a K-12 teacher, is inapposite. The *Wood* court stated that its decision "is a narrow one," *id.* at 1293, and the Supreme Court has repeatedly recognized that, unlike K-12 classrooms, "[t]he college classroom with its

15

surrounding environs is peculiarly the 'marketplace of ideas.'" *Healy v. James*, 408 U.S. 169, 180 (1972).[6] Contrary to Appellee Governor's belief, Gov. Br. 39, the age and maturity of adult college students, as opposed to minor high school students, have legal significance. *New Jersey v. T.L.O.*, 469 U.S. 325, 339 (1985); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986). The district court's extension of *Wood*'s reasoning to higher education, based on that court's flawed examination of whether there exists a "meaningful difference" between secondary school and university instructor speech, was therefore inconsistent with Supreme Court precedent. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).

### B. Professor Plaintiffs Prevail Under *Bishop*'s Balancing Test.

When presented with a First Amendment claim involving a university professor's in-class, curricular speech in *Bishop*, this Court had the opportunity to adopt Appellees' current position and hold that a professor's free speech interests must always yield to the university's pedagogical interests. Instead, this Court developed a balancing test, directing courts to conduct a fact-specific inquiry to

---

[6] Federal circuit courts that have applied *Garcetti*'s government speech mandate to K-12 educators have declined to do so for university professors. *Compare Brown v. Chi. Bd. of Educ.*, 824 F.3d 713, 715–16 (7th Cir. 2016) *with Kilborn v. Amiridis*, 131 F.4th 550, 558 (7th Cir. 2025). Treating university professors' in-class speech as government speech flies in the face of the Supreme Court's longstanding First Amendment principles and subverts the balancing test this Court developed in *Bishop v. Aronov*, 926 F.2d 1066, 1074–75 (11th Cir. 1991).

determine "to what degree a school may control classroom instruction before touching the First Amendment rights of a teacher." *Bishop v. Aronov*, 926 F.2d 1066, 1073 (11th Cir. 1991). By contrast, Appellees argue for a bright line rule where the university's authority to control curricular content always prevails over the professors' First Amendment rights—a rule that is patently inconsistent with *Bishop*.

### 1. The Context Factor Weighs in Professor Plaintiffs' Favor.

Appellees attempt to shoehorn the facts of *Bishop*, which involved a university's reprimand of a single professor for religious speech unrelated to his course, into this case, which involves a legislative ban on a broad variety of subject matter affecting future speech and course assignments of every professor in Alabama with a particular viewpoint, regardless of their relevance to course content. That argument fails for four reasons.

First, the regulation at issue in *Bishop* was a reprimand directed at an individual professor regarding potentially coercive religious speech that was wholly unrelated to his classroom teaching. Conversely, SB129 is a state-wide directive that regulates the speech of thousands of university professors and implicates key topics of academic instruction within university-approved curriculum. This Court has recognized the "heavy burden" on the government to justify a "policy that prospectively restricts speech." *O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1054 (11th Cir. 2022); *see also* Opening Br. 29. SB129's sweeping restrictions,

therefore, demand a more searching inquiry than the individual directive at issue in *Bishop*.

Second, the speech at issue in *Bishop* took place in "the university classroom during specific in-class time," 926 F.2d at 1074. In contrast, SB129's restrictions stretch far beyond in-classroom instruction and applied to Professor Simon's assignment taking place outside of scheduled class time. Doc.72 at 136–40, 142–47. SB129's prohibitions extend far beyond the speech of the individual professor that was at issue in *Bishop*. 926 F.2d at 1075.

Third, the university reprimand challenged in *Bishop* was narrowly tailored to ban a professor's recitation of his own religious views. Here, a professor could violate SB129 by simply discussing or assigning course material that espouses another individual's views. Indeed, the plain text of SB129 prohibits participation in "*course work* that advocates for or requires assent to a divisive concept." SB129 § 2(3) (emphasis added). The SB129 complaint lodged against Plaintiff Patton involved multiple assigned readings and her investigation examined course readings. Doc.55-20 at 1–4; Doc.72 at 40–41; Doc.55-22. Unlike the memo at issue in *Bishop*, SB129's restrictions extend beyond the views of the instructor. SB129's viewpoint discrimination further distances the statute from the viewpoint neutral regulation at issue in *Bishop*.

18

Fourth, Appellee Board suggests that the relevance of Professor Plaintiffs' planned course content to the course has no bearing on the court's First Amendment analysis. Board Br. 27–28. To the contrary, it is clear that "the Eleventh Circuit credited the University's determination that Dr. Bishop's religious speech was not part of its curriculum." *Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1271 (N.D. Fla. 2022); *see also Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 410 (5th Cir. 1995). Here, Professors self-censored university approved material that had been taught for decades without issue. Doc.72 at 66–67, 133, 197. Dr. Bishop's attempts to "discuss his religious beliefs or opinions under the guise of University courses," therefore, are patently different from the actions of Professor Plaintiffs at issue in this case. *Bishop*, 926 F.2d at 1076.

### 2. The Position as Public Employer Factor Weighs in Professor Plaintiffs' Favor.

Appellees fail to explain how UA's position as a public employer justifies a viewpoint discriminatory restriction on professor speech. Courts have repeatedly held that viewpoint-based restrictions are presumptively unconstitutional, including in higher education settings. *See Rosenberger*, 515 U.S. at 837.[7] Appellees' general

---

[7] Appellee Board cherry-picks language from *Rosenberger* to suggest that the Supreme Court's holding in that case supports its proposition that the university's position as a public employer allows it to exercise complete control over employee speech. *See* Board Br. 30. But the *Rosenberger* court's recognition of a university's authority to control its content does not suggest that university professors' speech

assertions about the importance of antidiscrimination, with no clear description of the discrimination targeted by SB129, are insufficient to overcome a First Amendment challenge given the longstanding availability of both federal and state anti-discrimination laws. *See Honeyfund*, 94 F.4th at 1281; *Pernell*, 641 F. Supp. 3d at 1276.

To support their position, Appellees tout academic autonomy. Yet this argument ignores the source of SB129's restrictions. SB129 is a statute that was enacted by the Alabama state legislature, not a campus regulation created by university stakeholders. Notably, it is the university, not the state legislature, to which courts defer when assessing the credibility of a school's stated pedagogical interests. *E.K. ex rel. Keeley v. Dep't of Def. Educ. Activity*, 807 F. Supp. 3d 517, 546 (E.D. Va. 2025). Appellees' attempts to conflate the interests of the university with the interests of the state legislature are inconsistent with the Supreme Court's repeated commands that universities should function without undue interference from the government. *See, e.g.*, *Sweezy v. New Hampshire*, 354 U.S. 234, 261 (1957).

---

has no First Amendment protection. *Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1238 (N.D. Fla. 2022). In fact, the viewpoint-discriminatory restriction imposed by the university in *Rosenberger* was ultimately struck down.

Provost Dalton's broad interpretation of SB129 further demonstrates the unreasonableness of the university's actions. Doc.55-30 at 1. "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *Keyishian*, 385 U.S. at 604. Rather than narrow specificity, Appellees' enforcement of SB129 was guided by the expansive reach of the statute. Importantly, "public universities do not have a license to act as classroom thought police." *Meriwether*, 992 F.3d at 507. Rather, "[t]heir chief mission is to equip students to examine arguments critically and, perhaps even more importantly, to prepare young citizens to participate in the civic and political life of our democratic republic." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1128 (11th Cir. 2022).

Due to SB129, however, Professor Plaintiffs are being asked to adhere to a state-mandated orthodoxy and have consequently censored their curriculum. Doc.72 at 51–61, 65–72, 136–40, 160–63, 217. SB129's government-imposed speech restrictions are neither reasonable nor justified when considering the government's position as a public employer.

### 3. The Academic Freedom Factor Weighs in Professor Plaintiffs' Favor.

This Court's assertion in *Bishop* that academic freedom is not an independent constitutional right does not suggest that the specific nature of First Amendment protections for educators and students bears zero weight. On the contrary, "[o]ur

21

Nation is deeply committed to safeguarding academic freedom," and "[t]hat freedom is therefore a special concern of the First Amendment." *Keyishian*, 385 U.S. at 603. The *Bishop* court recognized the "invaluable role academic freedom plays in our public schools." 926 F.2d at 1066. If, as Appellees suggest, academic freedom primarily belongs to academic institutions rather than professors, then the *Bishop* court's recognition of the professor' "interest in academic freedom and free speech" would be rendered meaningless—especially when the academic institutions are public universities under governmental control. *Id.* at 1076.

While courts may defer to universities about course content, this deference does not extend to the question of whether the university is following the Constitution. *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of L. v. Martinez*, 561 U.S. 661, 686 (2010). Despite Appellee Board's assertions, courts can, and must, assess the legitimacy of a school's stated interest and whether that interest is truly pedagogical rather than political when adjudicating a First Amendment claim. *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973); *Heim v. Daniel*, 81 F.4th 212, 230–33; *Kilborn v. Amiridis*, 131 F.4th 550, 562 (7th Cir. 2025).

Strikingly, when considering Professor Plaintiffs' academic freedom interests, the district court did not address the university's admission that it is discriminating on the basis of viewpoint. *See* Doc.71 at 123–24. "The Supreme

22

Court has reiterated time and again—and increasingly of late—the 'bedrock First Amendment principle' that '[s]peech may not be banned on the ground that it expresses ideas that offend.'" *Speech First*, 32 F.4th at 1126. SB129's "impos[ition] [of] a[] strait jacket upon the intellectual leaders" at Alabama public universities is patently at odds with First Amendment principles and significantly infringes on Professor Plaintiffs' academic freedom. *Sweezy*, 354 U.S. at 250.

Appellees' reliance on *Urofsky v. Gilmore*, 216 F.3d 401 (4th Cir. 2000), is misplaced. First, this case was decided years before *Garcetti* and therefore included no analysis of government speech principles in light of that decision. Second, post-*Urofsky*, the Fourth Circuit joined every other federal appellate court that has decided this issue in concluding that the *Garcetti* government speech analysis does not apply to professors' teaching or scholarship. *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 562 (4th Cir. 2011). Third, the discussion of academic freedom in *Urofsky* concerned whether professors had a right to academic freedom independent of other First Amendment rights, not the weight of a professor's interest in academic freedom. 216 F.3d at 412. Fourth, this Court's previous recognition of a professor's "interest in academic freedom and free speech" forecloses any suggestion in this Circuit that *Urofsky* supports a finding that academic freedom belongs solely to the academic institution and not the professor. *Bishop*, 926 F.2d at 1076. This Court firmly rejected the notion that a public university's "right to

23

academic freedom and autonomy" serves as an "absolute bar" to granting relief on a constitutional claim, even if that relief "requires regulating or overriding an educational policy decision made by a public university." *Knight v. State of Alabama*, 14 F.3d 1534, 1552–53 (11th Cir. 1994).

### C. The *Pickering* Balancing Test Weighs in Professor Plaintiffs' Favor.

Appellees misstate the relationship between *Pickering*,[8] *Garcetti*, and *Bishop*. *Pickering* involved the out-of-classroom speech of a K-12 teacher, not the in-classroom instruction of a college professor. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 564 (1968). Moreover, the Supreme Court decided *Pickering* several decades before *Garcetti*, making it impossible for the *Pickering* court to have considered and rejected the *Garcetti* court's caution against treating in-classroom university instruction as government speech, as Appellee Governor asserts, *see* Gov. Br. 37, contrary to Appellee Governor's claims, *id.* at 37–38, this Court did *not* apply *Pickering*'s balancing test in *Bishop*. In fact, the *Bishop* Court explicitly declined to employ *Pickering* balancing when it identified *Pickering* as one of many cases that was not "satisfactorily on point . . . to adopt as controlling." *Bishop*, 926 F.2d at

---

[8] Appellee Board contends that the district court 's *Pickering* analysis was not an error because *Bishop*, not *Pickering*, served as the basis for the holding. This argument is unavailing because the district court held that Plaintiffs' First Amendment Claims failed based on *Pickering*. Doc.79 at 93; *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

1074. Furthermore, post-*Bishop*, multiple courts have recognized the analyses deployed in *Bishop* and *Pickering* as two distinct tests. *See Scallet v. Rosenblum*, 911 F. Supp. 999, 1010 (W.D. Va. 1996), *aff'd*, 106 F.3d 391 (4th Cir. 1997). Nevertheless, Professor Plaintiffs' First Amendment claims would satisfy the *Pickering* balancing test even if it were applied to this case.

The district court erroneously concluded that Professor Plaintiffs fail at step one of the *Pickering* test by considering their in-classroom instruction to be government speech under *Garcetti*. As explained above, *Garcetti* is not the proper test for this case, and the district court abused its discretion by relying on government speech principles in its *Pickering* analysis. *Meriwether*, 992 F.3d at 507.

The second step of the *Pickering* test requires balancing the interests of a public employer and a public employee to determine if the employee's First Amendment rights have been violated. *Pickering*, 391 U.S. at 568. Appellees suggest that this Court must accept their proffered interest in preventing discrimination on campus without question. But in applying *Pickering* balancing, part of the court's analysis includes weighing the credibility of government's stated interest. *Id.* at 572.

Rather than requiring the State to meet its burden of articulating a credible interest that would outweigh Plaintiff Professors' interests, the district court improperly supplanted its own analysis to fill the gaps in Appellees' argument, Opening Br. 38. Appellees now make scant argument to try to cast doubt on

25

Professor Plaintiffs' significant free speech interests without first establishing its own interest in enforcing a viewpoint discriminatory law.

This Court recently rejected a similarly barebones "antidiscrimination" justification proffered by a governmental defendant as its interest in an analogous state statute. *See Honeyfund*, 94 F.4th at 1281. As in *Honeyfund*, Appellees' "antidiscrimination" interests ring hollow given the discriminatory nature of SB129 that prohibits only one view on certain topics but allows the other. The government cannot pursue its interest in "antidiscrimination" "by picking and choosing what kind of discrimination" is acceptable. *Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855, 865 (8th Cir. 2021). This, Appellees' general and superficial discussion of antidiscrimination, with no explanation of how SB129 serves that interest despite the longstanding availability of state and federal civil rights laws, is insufficient to justify forcing professors to censor their views while witnessing the proliferation of the Alabama state legislature's own preferred views in public universities.

Appellees attempt to minimize Professor Plaintiffs' free speech interests by referencing a few provisions of SB129 indicating a desire to respect professors' First Amendment rights. But Appellees cannot inoculate SB129's First Amendment violations by simply expressing an intent for constitutional compliance when other provisions of the statute directly contradict that stated intent. *See United States v.*

26

*Stevens*, 559 U.S. 460, 480 (2010). A statutory "savings clause instructing universities to uphold the First Amendment does not change the fact that the statute then requires universities to adopt policies that violate those very constitutional protections." *Fellowship of Christian Univ. Students at Univ. of Tex. at Dallas v. Eltife*, 806 F. Supp. 3d 662, 681 (W.D. Tex. 2025).

As the district court concluded, Professor Plaintiffs' desired speech clearly touches on matters of public concern. Doc.79 at 94. And Professor Plaintiffs' interests in speaking on matters of public concern, as part of their participation in the "robust exchange of ideas" that is central to university classrooms, outweigh the ambiguous and nonspecific interests proffered by the university. *Keyishian*, 385 U.S. at 603 (1967). These interests are particularly strong "in the social sciences, where few, if any, principles are accepted as absolutes." *Sweezy*, 354 U.S. at 250. The district court did not mention, must less evaluate, Professor Plaintiffs' free speech interests. *See* Opening Br. 106. (describing Professor Plaintiffs' interest as "in compelling or requiring assent to SB129's divisive concepts" rather than speaking free from viewpoint discrimination). Even if the district court did not err in conducting the *Pickering* balancing test, its failure to properly conduct and weigh the *Pickering* balancing factors was clear error. *See Belyeu v. Coosa Cnty. Bd. of Educ.*, 998 F.2d 925, 930 (11th Cir. 1993).

27

**IV.    Student Plaintiffs Testman and Luna Have a Substantial Likelihood of Succeeding on the Merits of Their Claim Regarding the University's Denial of Student Funding.**

This Court should affirm the district court's finding that Student Plaintiffs have a substantial likelihood of succeeding on the merits of their student funding claims. The record is unequivocal that Plaintiff Luna and Testman lost funding for their student groups due to SB129. Doc.73 at 319:12–322:11, 356:9–357:3. Appellees contention that SB129 is squarely aligned with *Rosenberger* because the law "mandates" the university to treat SJAC "like other student organizations," specifically RSOs, Board Br. 38–39; Gov. Br. 48, is meritless because SB129 discriminates against all student groups who receive State funding. Doc.69-8 at 61:19–62:17, 74:15–75:12; Doc.73 at 320, 320–21. This Court explained that "*Rosenberger* . . . made clear that 'ideologically driven attempts to suppress a particular point of view are presumptively unconstitutional in funding, as in other contexts.'" *Gay Lesbian Bisexual All. v. Pryor*, 110 F.3d 1543, 1549 (11th Cir. 1997). Given this precedent, and the record evidence, the district court properly found that SB129 caused Student Plaintiffs to suffer unconstitutional viewpoint discrimination. Additionally, as explained earlier, *infra* Section II(A)–(D), Student Plaintiffs have standing to bring these claims.

28

V.    **The District Court Abused its Discretion in Failing to Find a Substantial Likelihood of Success on the Merits for the Void for Vagueness Claims.**

A. **SB129 is Vague in Any Application in Violation of Due Process and, in the Alternative, in the Vast Majority of Its Intended Applications.**

When First Amendment concerns are present," a statutory provision "must be voided if it is vague in any application." *Cable Ala. Corp. v. City of Huntsville, Ala.*, 768 F. Supp. 1484, 1506 (N.D. Ala. 1991) (citing *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 494–95 (1982)). In this case, SB129 is vague under both facial and as applied theories of vagueness. *Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1329 (11th Cir. 2001); *Yin v. Diaz*, 773 F. Supp. 3d 1344, 1360 (S.D. Fla. 2025) (*citing Jacobs v. Fla. Bar*, 50 F.3d 901, 906 (11th Cir. 1995)).

Appellees argue that "[i]n the public employment context," the appropriate standard for vagueness is whether Appellant Professors receive "fair notice that certain conduct puts persons at risk of discharge." Gov. Br. 49; Board Br. 40. In addition, Appellees contend that a statute cannot be voided for vagueness so long as there is at least one instance in which conduct is clearly prohibited under statute. Gov. Br. 52. Both arguments should be rejected by this Court as meritless.

Appellees' reliance on *O'Laughlin* ignores Supreme Court precedent recognizing the uniqueness of the academic setting and importance of protecting free speech and academic freedom under the First Amendment. *See, e.g.*, *Keyishian*, 385

29

U.S. at 603. Appellees also fail to demonstrate how their public-employment vagueness standard applies to the student funding and space claims raised by Appellant Students. Finally only one has applied the public-employment vagueness standard to a law implicating divisive concepts. *See, e.g.*, *Tenn. Educ. Ass'n v. Reynolds*, 732 F. Supp. 3d 783, 806 (M.D. Tenn. 2024). The governing standard for vagueness claims, regardless of the plaintiff's employment, should have led the district court to find SB129 unconstitutionally vague. *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *Wollschlaeger v. Governor, State of Fla.*, 848 F.3d 1239, 1319 (11th Cir. 2017).

Second, any purported clarity of what SB129 prohibits comes from Appellees' singular proffered hypothetical of banned conduct—that Professor Plaintiffs should not compel their students to believe that "White people are inherently superior to Black people" misses the point. The record reflects all Plaintiff Professors engage in coursework which arguably could violate SB129 and implicate divisive concepts, Opening Br. 50, outside of this hypothetical.

The district court should have found that the Plaintiffs demonstrated SB129 was vague in the majority of its intended applications—i.e., in Professor Plaintiffs university approved curriculum—is unconstitutionally vague and must be preliminarily enjoined. *See Catron v. City of St. Petersburg*, 658 F.3d 1260, 1272 (11th Cir. 2011).

30

**B. The Terms "Objective Manner," "Without Consent," and "Historically Accurate" Are Unconstitutionally Vague.**

Appellees argue that the district court properly concluded that "objective manner" was not unconstitutionally vague in the academic context because a person of common intelligence can understand what "objective" means and refer to jury instructions as evidence of their clarity. Board Br. 41; Gov. Br. 52–53 & n.7. Appellee also argue that "[t]he phrases 'objective manner,' 'without endorsement,' and 'historically accurate' are simple enough to provide a professor of ordinary intelligence who wishes to instruct on 'divisive concepts' with a reasonable opportunity to understand what steps they should take to receive protection under the safe harbor." Board Br. 41.

First, courts look at "the specific context in which that language is used, and the broader context of the statute as a whole" when determining if a statute is vague. *Yates v. United States*, 574 U.S. 528, 537 (2015) (alterations in original). In the academic context, Professor Plaintiffs testified why the terms "objective manner" and "historically accurate" are inherently vague. Doc.72 at 86:22–88:6, 172:1–173:2, 213:9–17. Moreover, this Court and the Northern District of Florida have agreed. *Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1183–84 (N.D. Fla. 2022), *aff'd*, 94 F.4th 1272 (11th Cir. 2024); *Pernell*, 641 F. Supp. 3d at 1283–84.

31

### C. SB129's Scienter Requirement Does Not Alleviate the Law's Vagueness.

Despite the district court's findings, scienter requirements do not automatically provide blanket validity to an otherwise unconstitutionally vague law. Opening Br. 51. Notably, the record shows that the scienter requirement failed to provide protection for Professor Simon or Patton when UA enforced SB129. *Id.* Appellees also argue that SB129's language is not vague simply because Plaintiff Professors might risk violating SB129. Board Br. 42. Appellees' argument mischaracterizes the record given there was already enforcement. *Supra* Section I(B).

### D. The Terms "Compel Assent" and "Advocate For" Are Unconstitutionally Vague.

Appellees contend that Plaintiffs failed to explain how Professor Fording's exam question in his *Politics of Poverty* course could be construed as "advocating for" or "compelling assent to" several divisive concepts. Board Br. 43–44. The record describes how Professor Fording's instruction about "race is inextricably linked to poverty," coupled with guidance from the UA, lead to credible fears. Doc.73 at 235; Doc.55-30 at 1; Doc.72 at 199, 202, 215–17; Doc.55-25 at 98; Doc.69-7 at 13.

Moreover, the district court impermissibly used Appellees' in-court representations to cure vagueness in the text of SB129. Opening Br. 46. Appellees

misconstrue *Wollschlaeger* in arguing that the district court can "solicit and consider the parties' positions on the meaning of a challenged statute during a hearing." Board Br. 46 n.5. That is not what happened here. During the evidentiary hearing, Appellees' counsel simply asserted, without evidentiary support, that SB129 excludes readings from coursework. Doc.72 at 155–56. SB129 does not provide a definition of coursework. Doc.12-2 at 4. UA requested Professor Pattons to submit her books for review. Doc.55-21 at 1; Doc.72 at 109–11. Despite this, the district court held "case has no bearing on what reading assignments professors may assign to students." Doc.79 at 96. This was improper.

Finally, Appellees argue that Plaintiffs fail to demonstrate how the text of SB129 is vague. Board Br. 48–49; Gov. Br. 51–53. But this contention is explicitly contradicted by the record and all professors expressed difficulty understanding SB129. Doc.72 at 77, 161; Doc.73 at 243–44.

### E. SB129's Eight Enumerated Divisive Concepts Are Unconstitutionally Vague.

Appellees contention that the divisive concepts are not vague is belied by the fact that every court in the country, except the district court, that has adjudicated the alleged vagueness of "divisive concepts" in similar laws found those concepts to be unconstitutionally vague. *See* Opening Br. 49–50. Similarly, courts throughout the country have found that terms such as "moral character," "racist," and "sexist" are

33

value-laden terms that can make a statute unconstitutional. *Id.* at 42. Notably, Appellees have no response to this striking fact.

The record in this case is also replete with examples of how each of the eight divisive concepts are unconstitutionally vague and may implicate topics not identified in the text of SB129. Doc.73 at 260–62; Doc.72 at 70, 74–76, 157–60; Doc.55-9 at 1–11, 51.

### F. SB129 Authorizes or Encourages Arbitrary and Discriminatory Enforcement.

Plaintiffs have sufficiently shown how SB129, due to its failure to have adequate standards or guidance, encourages arbitrary and discriminatory enforcement of its provisions. Appellees' complaint that Plaintiffs solely focus on SB129's injuries to them, to explain how the text of the law encourages arbitrary and discriminatory enforcement, does not lessen Plaintiffs' showing. Board Br. 51–52.

The record makes it plain that SB129 is a law devoid of any standard. *Hill*, 530 U.S. at 732. Professor Simon was threatened with termination if she did not cancel her project. Opening Br. 52. Yet, Provost Dalton could not identify which divisive concept violated SB129. *Id.* Appellees' response focuses on Professor Simon's assignment for an advocacy project effectively compelled students to engage in a political activity and violated institutional neutrality by having a grade. Board Br. 52. The record reflects it was SB129 and not UA's institutional neutrality policy that caused her class assignment cancellation. Doc.56-2 at 2-10; Doc.72 at

34

146; Doc.69-7 at 6. Moreover, the institutional neutrality policy does not apply to students. Doc.69-1 at 1; Doc.69-4 at 19. Finally, as a social work professor, Simon's assignment was similar to a clinic for social work. *See Galda v. Rutgers*, 589 F. Supp. 479, 493 (D.N.J. 1984) (citation modified). Moreover, Professor Patton's enforcement is no less harmful because she wasn't terminated. *Supra* Section I(B).

Finally, Appellees argue that Student Plaintiffs are not experiencing arbitrary enforcement for DEI definitions because Student Plaintiffs failed to show how SB129's language is vague. Board Br. 53. Courts have found that DEI is a broad concept. *Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 779 F. Supp. 3d 149, 188 (D.N.H. 2025). Student Plaintiffs never received a definition of what constitutes a DEI program and yet have lost funding and campus space due to SB129 enforcement. Doc.73 at 319–20, 325, 342, 410. Plaintiffs have aptly shown the arbitrary and discriminatory enforcement of SB129 stemming from its vague language.

## VI.    The Remaining Preliminary Injunction Factors Favor Plaintiffs.

Appellee Governor argues that Plaintiffs cannot show that an injunction upending a well-established status quo would be in the public interest. Gov. Br. 68. However, it is not in the public interest to enforce an unconstitutional law. *See United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012). Moreover, where, as in this case, the "existing status quo itself is causing . . . irreparable injury, it is necessary to alter the situation so as to prevent the injury." *Melendez v. Sec'y, Fla.*

35

*Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at \*18 (11th Cir. 2022) (citation

modified).

Dated: April 21, 2026

Respectfully submitted,

/s/ *Antonio L. Ingram II*

Alison Mollman
ACLU of Alabama
PO Box 6179,
Montgomery, AL 36106
(510) 909-8908

Carmen Lo
Arnold & Porter Kaye Scholer LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
(650) 319-4500

Daniel A. Cantor*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
(202) 942-5000
*Admitted pro hac vice*

Jin Hee Lee
Antonio L. Ingram II
Emahunn Campbell
Mide Odunsi
NAACP Legal Defense &
Educational Fund, Inc.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300

Michael Rogoff
Purti Pareek
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7684

*Counsel for Plaintiffs-Appellants*

37

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Brief contains 7,990 words, consistent with the length limitation in Fed. R. App. P. 32(a)(7)(B) and the Court's Order permitting Plaintiffs to file a revised brief containing no more than 8,000 words. Apr. 17 Order. This brief has been prepared using a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman, consistent with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirements of Fed. R. App. P. 32(a)(6).

Dated: April 21, 2026

/s/ *Antonio L. Ingram II*
Antonio L. Ingram II

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I certify that on April 21, 2026, I electronically filed this document using the Court's

CM/ECF system, which will serve all counsel of record.

/s/ *Antonio L. Ingram II*
Antonio L. Ingram II

*Counsel for Plaintiffs-Appellants*